IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLARA A. KINGSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04CV778-SRW |
| ) | (WO) |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Clara A. Kinsley brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On January 3, 2003, plaintiff filed an application for disability insurance benefits. On September 23, 2003, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on November 21, 2003. The ALJ concluded that plaintiff suffered from the severe impairment of "residuals from a broken ankle." (R. 18). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that

plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff had not been disabled within the meaning of the Social Security Act since the alleged onset date. On June 14, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

On September 25, 2001, plaintiff was working as a certified nursing assistant,

performing home health care. She stepped on a loose step at her patient's home and fell, injuring her ankle. (R. 64, 217). An X-ray revealed that plaintiff had a displaced left lateral malleolus fracture and an undisplaced proximal fibular fracture. She was admitted to the hospital that day, where Dr. Dean Lolley, an orthopedic surgeon, performed an open reduction/internal fixation ("ORIF") of the displaced left lateral malleolus fracture. (R. 121-22, 165). Dr. Lolley treated plaintiff postoperatively until May 2002. Plaintiff complained of continued ankle pain. Additionally, she reported left knee pain, stating that her left knee pain also began with her fall. An X-ray of her knee showed "marked lateral tilting of the patella." Dr. Lolley released plaintiff for "sedentary duties with occasional walking, but no lifting, prolonged standing or walking" on November 28, 2001, and released her to "full duty work" on January 7, 2002. (R. 126-29). On October 29, 2001, while her treatment with Dr. Lolley was ongoing, plaintiff also visited Dr. Richard Meadows, D.O., with complaints of left knee pain. (R. 134). On April 2002, plaintiff went to see Dr. Meadows complaining of sinus drainage, cough, and left knee and ankle pain. (R. 133).

On February 27, 2002, plaintiff went to see Dr. James Owen at First Med of Dothan seeking a second opinion regarding her left ankle. In his treatment note, Dr. Owen recounted plaintiff's course of treatment with Dr. Lolley, then states:

> She now presents to the office ambulating and appears in no apparent distress. She is seeking a second opinion. She says she has no fault with Dr. Lolley's treatment. I really do not know why she is here other than to seek an opinion, possibly for a disability rating and MMI.

(R. 171). After conducting a physical examination, performing X-rays and comparing those to X-ray films made on November 24, 2001, Dr. Owen noted his diagnosis of "Fractured

3

proximal fibula, healed." (R. 170). Plaintiff returned to Dr. Owen six months later, on August 21, 2002. Dr. Owen noted that plaintiff had seen Dr. Lolley who "felt that the patient had a subluxating patella or lateral riding patella and recommended therapy with bracing." Plaintiff reported that her ankle "has been doing fairly well," but that she "has not been back to work because of continued pain in her knee." On clinical examination, Dr. Owen noted that plaintiff has "valgus knees bilaterally," and that she was tender to palpation along her patella and along the patella tendon.  Dr. Owen prescribed physical therapy, indicating that "a set of strengthening exercises may be of benefit." (R. 170). On September 11, 2002, plaintiff reported to Dr. Owen that she is "doing better with her knee" and "is having less pain." His examination revealed improved strength and range of motion. Dr. Owen advised plaintiff to continue with therapy for two weeks and to return to see him as needed. (R. 169). The record does not include evidence of any later treatment for plaintiff's ankle or knee.

On January 3, 2003, plaintiff filed a claim for disability benefits, alleging that she became disabled on September 25, 2001, the date of her fall. She claimed that she was unable to work because she "broke [her] ankle and also damaged [her] knee." (R. 63; see also R. 75).

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ erred by failing to assign weight to any physician; and (2) the ALJ erred in relying on the medical-vocational guidelines rather than obtaining testimony from a vocational expert.

## Failure to Assign Weight

Plaintiff argues that the ALJ erred by failing to specify the weight he gave to medical

opinions in the record. In her brief, the plaintiff references various diagnoses which she contends were not discredited or accorded weight. However, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or the Eleventh Circuit] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)(citation omitted); see also Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 698 n. 4 (11th Cir. Mar. 14, 2006)(unpublished opinion)(rejecting plaintiff's argument that it is reversible error for an ALJ not to assign weights to the opinions of treating physicians explicitly, where it was clear from the decision that the ALJ gave appropriate consideration to the opinions).

In the present case, the ALJ summarized the medical evidence of record.[1] He noted

---

[1] In her reply brief, plaintiff criticizes the ALJ's summary of the evidence. She argues that, as to plaintiff's treatment by Dr. Meadows, the ALJ stated only that "[t]he evidence contains records from Richard V. Meadows, D.O., who has treated the claimant for various illnesses (Exhibits 5-F and 13-F)." (Doc. # 16, Plaintiff's reply brief, p. 2). An examination of these records reveals why the ALJ did not feel the need for further description of the treatment. Dr. Meadows' records include treatment notes from sixteen office visits over a period of fifteen years. Only two of these visits – October 29, 2001 and April 23, 2002 – included complaints of ankle and knee pain, the basis for plaintiff's claim of disability. The remainder of the visits were for an assortment of complaints and do not reflect ongoing treatment for any particular ailment. Plaintiff sought treatment from Dr. Meadows once a year between 1987 and 1991 – in October 1987 for a urinary tract infection, in September 1988 for sinusitis and allergic rhinitis, in January 1989 because she wanted "water pills or fasting pills," in December 1990 for vaginitis and trichomonas vaginalis, and in October 1991 for a sprained ankle. (R. 141-43, 146). She did not receive treatment from him for four years, until September 1995, when plaintiff visited Dr. Meadows to obtain a physical examination for her employment. (R. 140). Five months later, in March 1996, plaintiff returned to Dr. Meadows complaining of low back pain. (Id.). In June 1996, Dr. Meadows performed another employment physical. (Id.). He did not treat plaintiff for three and a half years, until she returned in January 2000 complaining of sinus drainage. (R. 138). In March 2000, Dr. Meadows treated plaintiff for complaints of sinus drainage and dizziness. (R. 137). Dr. Meadows saw plaintiff three times in 2001 – once for sinusitis, upper respiratory infection and borderline hypertension (R. 136), once for

5

that plaintiff was released to return to work on January 7, 2002 by her treating orthopedic surgeon. The ALJ further noted the clinical examination findings of Dr. Owen, plaintiff's treating physician at First Med of Dothan, including Dr. Owen's observation that plaintiff's fracture was healed. The ALJ also stated that Dr. Owen only recommended strengthening exercises for the plaintiff. (R. 21). It is apparent that the ALJ gave controlling weight to the opinions of these treating physicians. Plaintiff identifies no treating or non-treating medical source who concludes that plaintiff cannot perform a full range of sedentary work. The ALJ's failure to assign weight to the opinions of plaintiff's treating physicians explicitly does not, on the facts of this case, warrant reversal. See Heppell-Libsansky, *supra*.

### Reliance on the "Grids"

Plaintiff further argues that the ALJ erred by failing to obtain vocational expert testimony and, instead, relying on the medical-vocational guidelines to support his Step 5 determination that plaintiff is not disabled.

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."
>
> Therefore, [the court] must determine whether *either* of these two conditions exists in this case. If *either* condition exists, the ALJ was required to consult

---

complaints of an itchy rash around her neck (R. 135), and once for her complaints of ankle and knee pain (R. 134). Plaintiff called asking for a sinus prescription in September 2001; Dr. Meadows prescribed Allegra. (R. 135). In April 2002, plaintiff saw Dr. Meadows for complaints of sinus drainage, cough, and left knee and ankle pain. (R. 133). In August 2002, Dr. Meadows saw plaintiff after she suffered an accidental needle stick while administering insulin to someone else. (R. 132).

a vocational expert.

Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(citations omitted)(emphasis and alteration in original).

The ALJ concluded that plaintiff retains the residual functional capacity to perform the full range of sedentary work. (R. 22-23).[2] Plaintiff does not contend that she cannot meet the exertional demands of sedentary work. Instead, she argues that the ALJ erred in relying on the grids because plaintiff has nonexertional impairments. In his decision, the ALJ explicitly recognized that use of the grids would not be appropriate unless "there are no non-exertional limitations." (R. 23). He then proceeded to apply Medical-Vocational Rule 201.21 to reach his determination. (Id.). Thus, it is apparent that the ALJ determined that plaintiff did not suffer from nonexertional limitations.[3]

> The terms exertional and nonexertional describe types of functional limitations or restrictions resulting from a medically determinable physical or mental impairment. See Social Security Ruling 96-4, 61 Fed. Reg. 34488 (July 2, 1996). Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. Id.

Phillips, *supra*, 357 F.3d at 1242 n. 11.

---

[2] At one point in his decision, the ALJ refers to plaintiff's ability to perform the full range of "light" work." (R. 23). However, it is clear from the remainder of the decision, including the ALJ's specific findings and the rule that he applied, that the ALJ found the plaintiff capable of only sedentary work.

[3] See Plaintiff's brief, Doc. # 11, p. 7 ("Despite evidence of nonexertional impairments, the ALJ found 'there are no non-exertional limitations' and relied solely on the Medical-Vocational Guidelines (R. 23).").

Plaintiff argues that she suffers from "**numerous** nonexertional impairments, including: microcytic anemia, vertigo, hypertension, severe obesity, and pain[.]" (Plaintiff's brief, Doc. # 11, p. 7)(emphasis in original).  However, as the Commissioner argues, with regard to all of the nonexertional "impairments" plaintiff identifies – other than pain – plaintiff relies on diagnoses only, without evidence of a resulting limitation on her ability to function, either at all or for a duration sufficient to sustain a finding of disability.[4]  Plaintiff was diagnosed with microcytic anemia when she reported to the emergency room for treatment of epigastric pain and chest pain on February 8, 2001.  She was prescribed iron pills. (R. 106-07, 109).  Plaintiff was diagnosed with vertigo on a single occasion on March 14, 2000 when she reported to Dr. Meadows with complaints of dizziness and sinus drainage. (R. 137).  Dr. Meadows diagnosed plaintiff with borderline hypertension – also on a single occasion – in early 2001. (R. 136).  Plaintiff was diagnosed as obese on a few occasions. (See *e.g.*, R. 153, 170).

Plaintiff cites textbook descriptions of functional limitations which *may* be caused by anemia, vertigo and obesity and argues (without a citation to a medical dictionary or text) that hypertension also causes nonexertional limitations.  (Plaintiff's brief, Doc. # 11, pp. 7-

---

[4] With regard to obesity, SSR 02-01p states:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment.  Neither do descriptive terms for levels of obesity  (*e.g.*, "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.  Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2000 WL 628049 at * 4.

12). However, plaintiff has not alleged that she herself suffers from the nonexertional limitations described in the texts as a result of the impairments of microcytic anemia,[5] vertigo, hypertension or obesity. Additionally, she has not provided any evidence that these impairments caused nonexertional functional limitations of the requisite duration or that they are or were "severe" impairments. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).[6] Plaintiff did not allege in her application or hearing testimony that these impairments contribute to her inability to work, nor did she introduce evidence demonstrating that these impairments caused functional limitations contributing to her alleged disability. Under these circumstances, the court declines to hold that the ALJ erred in his treatment of these diagnoses. Cf. Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996).

---

[5] In her reply brief, plaintiff cites to evidence of "weakness," and plaintiff's testimony that she requires help to get out of a chair, contending that this is related to plaintiff's anemia. (Plaintiff's reply brief, Doc. # 16, p. 6)(citing R. 150, 225). However, a review of this evidence reveals that the "weakness" discussed therein pertains to the strength of plaintiff's leg. See R. 150 (Dr. Banner's note that "Patient complains of weakness and decreased ability to use her left leg resulting from a fall in September 2001."); R. 224-25 (Plaintiff's hearing testimony that, "My disability is when I fell and broke my ankle, I also damaged my leg – my knee in the process and my job was going in and out of the homes, okay? I have to go up and down steps and I'm having difficult problems going up the steps because I really have to have someone, you know, with me. I either have to hold on to something, you know, to get up the steps and into their home. Sitting down, sometimes, I have to have somebody help me get up out of the chair."). Additionally, plaintiff notes that the ALJ failed to question plaintiff about the specific problems which led to her hysterectomy immediately prior to the hearing. (R. 231-32). However, the ALJ immediately thereafter allowed plaintiff's representative an opportunity to present further testimony or evidence, which he declined. (R. 233).

[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

Plaintiff argues that "pain is a nonexertional impairment."  (Doc. # 11, p. 7). However, "[m]edical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional." SSR 96-8p.   Pain may, in other words, result in nonexertional limitations. See Phillips, *supra*, 357 F.3d at 1242 n. 11.

> If the only limitations or restrictions caused by symptoms, such as pain, are in one or more of the seven strength demands (e.g., lifting) the limitations or restrictions will be exertional.  On the other hand, if an individual's symptoms cause a limitation or restriction that affects the individual's ability to meet the demands of occupations other than their strength demands (e.g., manipulation or concentration), the limitation or restriction will be classified as nonexertional.

Id.

Plaintiff complained to her physicians of ankle and knee pain beginning with her fall on September 25, 2001.  She testified at the administrative hearing that she has pain on the side of her ankle which "is not severe pain" and which occurs "once or twice a week or so." (R. 227). She testified that she has pain under her foot every day. (Id.).  She further testified that she has no pain in her left knee, but only a lack of strength.  (R. 228-29).[7]  She

---

[7] Plaintiff earlier testified that she had pain in her knee.  (R. 226).  However, upon further questioning by the ALJ, plaintiff clarified that it was a lack of strength.  She testified as follows:

Q.  Any pain in that left knee?

A.  The left knee doesn't have a whole lot of strength in it from that bone, from that area?

Q.  I'm talking about pain.

"sometimes" has pain in her hip and experiences pain in her right knee "not very often . . . maybe once or twice, maybe every two months or so." (R. 229-230). In February 2003, plaintiff indicated in a pain questionnaire that she feels pain often when she is walking, but that she "hardly" feels any pain as long as she is seated. (R. 91).

In his decision, the ALJ evaluated plaintiff's allegations regarding her limitations and found them to be "not totally credible." (R. 24). The ALJ articulated a number of reasons for this conclusion. (R. 21-22). Plaintiff argues that the ALJ "did not specify which portion of her testimony he found credible," and that he failed to "specify the amount of pain he found credible." (Plaintiff's reply brief, p. 4).[8] However, it is apparent that the ALJ found plaintiff's allegations credible to the extent that she is limited to sedentary work, which "represents a significantly restricted range of work." 20 C.F.R. Part 404, Subpart P, App. 2, § 201(h)(4). Additionally, as noted above and as argued by plaintiff, the ALJ concluded that plaintiff suffers from no nonexertional limitations. Thus, it is clear that he found plaintiff's allegations of pain credible only to the extent that the pain imposed no nonexertional

---

    A. No pain.

    Q. No pain?

    A. No, sir.

    Q. Swelling?

    A. No swelling.

(R. 228-29).

[8] Plaintiff also argues, however, that the adequacy of the Commissioner's credibility determination "has never been an issue in this case." (Plaintiff's reply brief, Doc. # 16, p. 2 n. 1).

limitation on her capability to perform sedentary work. Plaintiff has not argued or demonstrated that this credibility finding was made in error. Rather, her contention appears to be that *any* level of pain precludes the ALJ's use of the grids. As noted above, this is not the law. The court concludes that the ALJ's determination that plaintiff's pain is not of sufficient degree to impose nonexertional limitations on her ability to perform sedentary work is supported by substantial evidence and, thus, that the ALJ was not required to elicit testimony from a vocational expert.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate judgment will be entered.

Done, this 3rd day of August, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE